UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| MARQUISE HARRIS, | ) | |
|---|---|---|
| | ) | Case No. 3:21-cv-27 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| TDOC COMMISSIONER TONY PARKER, CORPORAL HONEY, MIKE PARRIS, BRANDON FOSTER, and A. MOORE, | ) ) ) ) ) | |
| *Defendants*. | ) | |

# MEMORANDUM OPINION

This is a pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983. Defendants Parker, Parris, Foster, and Moore have filed a motion to dismiss Plaintiff's claims against them (Doc. 26), and Defendant Honey has filed a motion for summary judgment (Doc. 28). Plaintiff has filed responses opposing both motions (Docs. 35, 36, 37, 42, 43). Defendant Honey has also filed a reply in support of his summary-judgment motion (Doc. 40). For the reasons set forth below, the Court will **GRANT** both motions and **DISMISS** this action.

## I. MOTION TO DISMISS

### A. Background

On October 17, 2020, Defendant Honey, a corporal at the Morgan County Correctional Complex ("MCCX") received notification from his supervisor that a "kill order" had been issued against Plaintiff by members of the Gangster Disciples. (Doc. 9, at 4.) Plaintiff requested protection, but, because he could not identify the specific individuals who posed a threat to him, Defendant Honey and his supervisor determined that Plaintiff should return to his housing unit in

Unit 22A.  (*Id*. at 3–4.)

On October 18, 2020, Inmates Carroll, Robey, and Carter, who were also housed in Unit 22A, beat and stabbed Plaintiff while officers "stood there and watched for several minutes before trying to stop the attack."  (*Id*. at 3, 6.)  Plaintiff was taken first to the MCCX clinic and then transported by ambulance to the Methodist Medical Center for treatment.  (*Id*. at 3.)

On November 4, 2020, Plaintiff returned to Unit 22A and was left unsupervised by officers.  (*Id*. at 5.)  Inmate Carroll again chased Plaintiff and attempted to stab him.  (*Id*.)  Plaintiff was able to defend himself until help arrived, however, and received only minor injuries (*Id*.)  As a result of this incident, Plaintiff was written up for assault on an inmate with a deadly weapon and possession of a deadly weapon and was placed in administrative segregation in Unit 24B.  (*Id*. at 7.)  The officer asked Plaintiff to sign the disciplinary reports, but Plaintiff refused.  (*Id*.)  Plaintiff asked for a copy of the reports, but his request was denied.  (*Id*.)

Plaintiff maintains that Units 21 and 22 have numerous security issues, such as malfunctioning door locks, the prevalence of weapons, officers' failure to ensure that inmates pass through the metal detector, and failure to place an officer in the control room to monitor the inmates.  (*Id*. at 4.)  Plaintiff contends that Corporal Honey, along with Tennessee Department of Correction ("TDOC") Commissioner Tony Parker, MCCX Warden Mike Parris, and MCCX Internal Affairs Investigator Brandon Foster, are well aware of the security issues and "uncontrolled violence" in Units 21 and 22.  (*Id*. at 3, 5–6.)  Plaintiff otherwise maintains Defendants received telephone calls and written reports notifying them that Plaintiff had been stabbed on October 18, 2020, but they nonetheless ordered him to return to Unit 22A upon his arrival at MCCX on November 4, 2020.  (*Id*. at 6.)

On November 25, 2020, MCCX Disciplinary Board Chairperson A. Moore and an inmate advisor presented Plaintiff "with an offer" that he rejected, stating that he had not been provided

2

a staff advisor or a copy of the disciplinary write-ups. (*Id.* at 7.) Plaintiff was provided a seven-day continuance to allow him to prepare a defense, and on December 2, 2020, Defendant Moore and the inmate advisor again met with Plaintiff. (*Id.*) Plaintiff complained that he still had not received a copy of the disciplinary reports or a staff advisor. (*Id.*) Plaintiff advised Defendant Moore that he needed a staff advisor and the reports to prove that he was merely defending himself against an unprovoked assault by Inmate Carroll. (*Id.* at 8.) Plaintiff requested another seven-day continuance, and on December 7, 2020, Defendant Moore and the inmate advisor returned to notify Plaintiff that he would not be receiving a staff advisor or copies of his disciplinary reports, and that a disciplinary hearing would convene on December 10, 2020. (*Id.*) Plaintiff sought an additional continuance but never received a response. (*Id.*) On December 10, 2020, a disciplinary hearing was conducted without Plaintiff present. (*Id.*) Plaintiff was found guilty of both disciplinary offenses and received a $10 fine, sixty-days punitive segregation, administrative segregation placement, and a custody-level change. (*Id.*)

Plaintiff alleges that he appealed both disciplinary decisions to Defendant Parris on December 31, 2020, but Defendant Parris denied the appeals on January 7, 2021. (*Id.*) On January 19, 2021, Plaintiff appealed Parris' decisions to Defendant Parker. (*Id.*) Both of those appeals were denied. (*Id.*)

**B.     Standard of Review**

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of

3

misconduct." *Id*. at 679. When considering a plaintiff's claims, all factual allegations in the complaint must be taken as true. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the Supreme Court has cautioned:

> Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 679 (internal citations omitted).

Additionally, while Plaintiff's claim survived a frivolity review upon initial screening under the Prison Litigation Reform Act ("PLRA"), the standard for overcoming a Rule 12(b)(6) motion is a higher bar than the frivolity standard in 28 U.S.C. § 1915. *See, e.g., Leach v. Corr. Corp. of Am.*, No. 3:16-CV-2876, 2017 WL 35861, at *3 (M.D. Tenn. Jan. 4, 2017) (stating the required screening of a plaintiff's complaint under the PLRA is "a lower burden for the plaintiff to overcome in order for his claims to proceed" than for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure).

    **C.**    **Analysis**

        *1.*    ***Defendant Moore***

Plaintiff maintains that Defendant Moore violated his Fourteenth Amendment right to due process in the disciplinary proceedings based on Moore's "failure to adhere to the uniform disciplinary procedures (UDP) TDOC policy 502.01." (Doc. 9, at 9.)

The Fourteenth Amendment states in relative part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Procedural due-process claims are analyzed in two steps: (1) "whether there exists a liberty or property interest which has been interfered with by the State," and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dept. Corr. v. Thompson*,

4

490 U.S. 454, 460 (1989) (citations omitted). "The types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited," and "an individual claiming a protected interest must have a legitimate claim of entitlement to it." *Id.* (citations omitted).

Although "state law may create enforceable liberty interests in the prison setting," *id.* at 461, a liberty interest generating due-process rights does not always arise from "mandatory" language in prison policies. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, the existence of a liberty interest is determined by the disciplinary punishment imposed, and liberty interests for prisoners are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Accordingly, a failure to comply with prison regulations regarding disciplinary proceedings does not itself raise a constitutional issue, as mandatory language in prison regulations alone does not create a liberty interest protected by the Due Process Clause. *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was denied a copy of his disciplinary report and that he was punished for his conviction of assaulting an inmate with a fine, 60 days' punitive segregation, administrative-segregation placement, and a custody-level change. (Doc. 9, at 8.) None of these deprivations rises to the level of a liberty interest requiring due process under the Fourteenth Amendment. Placement on punitive or administrative segregation does not trigger a right to due process. *See Sandin*, 515 U.S. at 486 (finding confinement in disciplinary segregation for 23 hours per day "did not present the type of atypical, significant deprivation in which the state might conceivably create a liberty interest"); *Harris v. Truesdell*, 79 F. App'x 756, 758 (6th Cir. 2003) (finding inmate's punishment of 60 days in punitive segregation did not give rise to protected liberty interest); *Rimmer-Bey*, 62 F.3d at 791 (holding that "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").

5

The Sixth Circuit has also held that an "increase in security classification . . . does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life because a prison has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (finding change in "prisoner classification" does not implicate a due process right).

Plaintiff also lacks a cognizable due-process claim based upon the $10.00 fine. "In order to have a protected property interest, an individual must 'have a legitimate claim of entitlement' to the property interest." *Bethel v. Jenkins*, 988 F.3d 931, 942 (6th Cir. 2021) (quoting *Bd. of Regents of State Colls. V. Roth*, 408 U.S. 564, 577 (1972)). "[P]roperty interests 'are not created by the Constitution;' rather, they are established by 'an independent source such as state law.'" *Id.* (quoting *Roth*, 408 U.S. at 577). Unpublished Sixth Circuit cases suggest that small disciplinary fines do not trigger procedural-due-process protections. *See McMillan v. Fielding*, 136 F. App'x 818, 830 (6th Cir. 2005) (holding that "[t]en days in lock up, the loss of package privileges, and a $4.00 fine do not constitute an atypical and significant hardship in the context of prison life"); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding 14-day loss of privileges and $3.00 sanction in disciplinary proceedings did not deprive inmate of protected liberty interest). However, even assuming Plaintiff had a property interest in the $10.00 he was required to pay, *see, e.g.*, *Whitmore v. Hill*, 456 F. App'x 726, 729 (10th Cir. 2012) (assuming that a $10.00 fine implicated the plaintiff's property interests protected by due process), Plaintiff's claims still fail because he has not alleged that he received insufficient process.

> In determining the necessary procedures under procedural due process, courts consider (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal

6

and administrative burdens that the additional or substitute procedural requirement would entail."

*Bethel*, 988 F.3d at 943 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Here, Plaintiff's private interest in the $10.00 is quite small and "do[es] not begin to approach the kinds of government conduct that have required a predeprivation hearing." *Sickles v. Campbell Cnty., Ky.*, 501 F.3d 726, 730 (6th Cir. 2007) (finding prisoners' private interests in $20.00 and $110.27 "small in absolute and relative terms"). Additionally, the Government's interest in resolving disciplinary issues in a timely manner is substantial. Finally, the risk of erroneous deprivation of Plaintiff's interest through the procedures used was relatively low. Although Plaintiff alleges that he was not given a copy of the disciplinary reports or a staff advisor as requested, he alleges he was granted several continuances of his disciplinary hearing to prepare his defense. (Doc. 9, at 7–8.) Further, granting a staff advisor to all inmates for disciplinary matters where only a small property interest may be affected would impose a significant administrative burden on the Government. Notably, there was a predeprivation hearing in this case, which was continued, per Plaintiff's request, until December 10, 2020. (*Id.* at 8.) Although Plaintiff was not present for the hearing, he gives no reason as to why he did not attend or seek another continuance before 9:00 a.m. on the day of the hearing. Due process does not require the constant continuance of a hearing, especially when Plaintiff fails to timely request such continuance. Plaintiff relies only on Defendant Moore's failure to comply with TDOC policy in relation to the hearing, but prison policies do not alter what the Constitution requires. Plaintiff received constitutionally adequate process before being deprived of the $10.00. Therefore, he has failed to state a claim against Defendant Moore, and she will be dismissed.

    2. ***Defendants Parker, Parris, and Foster***

Plaintiff alleges that Defendants Parker, Parris, and Foster were all aware of the security and violence issues in Plaintiff's housing unit and failed to take appropriate action to prevent the

injuries to Plaintiff on October 18, 2020, or on November 4, 2020. To subject Defendants Parker, Parris, and/or Foster to § 1983 liability, Plaintiff must contend that each of these officials had some personal involvement in the alleged unconstitutional activity set forth in the Complaint. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (holding § 1983 liability does not exist against supervisory personnel absent "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it"); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). That is, supervisors cannot be held liable under § 1983 solely for being in a supervisory position. *See Monell v. Dept. of Social Serv.*, 436 U.S. 658, 691-92 (1978) (holding there is no *respondeat superior* liability in § 1983); *West v. Atkins*, 487 U.S. 42, 50 (1982) (holding each defendant can only be held liable for his own actions or failure to act while exercising his responsibilities under the law). To maintain a claim against a supervisory official, the supervisor must have abdicated his or her job responsibility, and the "*active performance* of the [supervisor's] individual job function" must have directly resulted in the constitutional injury. *Troutman v. Louisville Metro Dep't of Corrs*. 979 F.3d 472, 487 (6th Cir. 2020) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (emphasis in original)).

Therefore, liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted). Mere allegations that a superior failed to respond to a complaint or investigate the circumstance of a grievance is insufficient to subject the supervisor to § 1983 liability. *See, e.g., Shehee*, 199 F.3d at 300 (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on

8

supervisory personnel under § 1983); *see also Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("[T]he denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.") (internal quotation marks omitted).

In this instance, Plaintiff does not allege that Defendants Parker, Parris, and Foster were involved in any of Plaintiff's protective custody or housing decisions. Rather, his allegation against these Defendants is that they failed to act regarding his complaints and/or grievances. These are respondeat superior allegations that are insufficient to state a § 1983 claim.

Further, Plaintiff's allegation against these Defendants knew of a threat that they failed to avert is conclusory. "[I]t is not sufficient, even at the motion-to-dismiss stage, to make . . . vague and conclusory assertions without factual support." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (quoting *Meeks v. Larsen*, 611 F. App'x 277, 283 (6th Cir. 2015)). Accordingly, without specific factual contentions to support "the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff fails to state a claim upon which relief may be granted against these Defendants. *Iqbal*, 556 U.S. at 678. As such, Defendants Parker, Parris, and Foster will be dismissed.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Background

The undisputed evidence demonstrates that on October 22, 2020, Plaintiff filed a grievance claiming that Defendant Honey violated Plaintiff's rights by failing to place him in protective custody on October 17, 2020, and therefore failed to prevent the October 18, 2020 assault against Plaintiff. (Doc. 28-2, at 1–3.) A grievance hearing was set for February 10, 2021, but Plaintiff refused to leave his cell to attend the hearing. (*Id.* at 5–6; Doc. 28-1 ¶¶ 4–6.) Pursuant to procedures set forth in the Inmate Grievance Handbook, Plaintiff's grievance was dismissed for his refusal to attend the hearing. (Doc. 28-1 ¶¶ 7–8; Doc. 28-3, at 8.) On February

9

12, 2021, the Warden approved the grievance dismissal due to Plaintiff's refusal to participate in the process, and the Grievance Chairperson sent the grievance documents to Plaintiff through inmate mail. (Doc. 28-1 ¶¶ 9–10; Doc. 28-2, at 6.) Those documents included a provision for Plaintiff to appeal the Warden's response to the Office of the TDOC Commissioner (the third level of appeal). (Doc. 28-2, at 6.) Plaintiff did not appeal the Warden's response. (*Id.*) Plaintiff concedes that he received a copy of the documents from the grievance proceedings on February 25, 2021. (Doc. 37, at 12.)

### B. Standard of Review

Summary judgment is proper only when the evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary

facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

  **C.**  **Analysis**

  Defendant Honey has moved for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies under the PLRA prior to filing the instant action. (Doc. 28.)

  The PLRA requires prisoners to exhaust all available administrative remedies prior to filing suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Administrative exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Moreover, the exhaustion requirement is one of "proper exhaustion," which requires a plaintiff to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93.

  Plaintiff argues that, although he received a copy of the documents from the grievance proceedings, he could not appeal the decision of the Warden to the Commissioner because he had a machine copy of the grievance instead of the original required by TDOC policy. (Doc. 37, at 12.) However, this argument is not supported by a review of the TDOC grievance policy and Inmate Handbook, which merely requires an inmate to utilize a CR-1394 form to file a grievance. (*See* Doc. 28-3, at 7; Doc. 36-1, at 12 13.) Accordingly, the competent summary-judgment evidence demonstrates that Plaintiff failed to appeal the Warden's decision to the third

11

level of review so as properly exhaust his administrative grievances under the PLRA, and Defendant Honey's motion (Doc. 28) will be **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, Defendants' respective motions (Docs. 26, 28) will be **GRANTED**, and this action will be **DISMISSED** it its entirety. Plaintiff's claims against Defendants Moore, Parker, Parris, and Foster will be **DISMISSED WITH PREJUDICE**, and his claims against Defendant Honey will be **DISMISSED WITHOUT PREJUDICE**.

Further, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, and that Plaintiff should be **DENIED** leave to proceed *in forma pauperis* on any subsequent appeal. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**